|  |  |  |
|---|---|---|
| LEONISE GREIG-POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 2017-42 |
| v. | ) | |
| | ) | |
| LIAT (1974) LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

ATTORNEYS:

**Clive Claudius Rivers**
Law Offices of Clive Rivers
St. Thomas, VI
    *For the plaintiff Leonise Greig-Powell*

**Christopher Allen Kroblin**
Kellerhals Ferguson Kroblin PLLC
St. Thomas, VI
    *For the defendant LIAT (1974) Ltd.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of LIAT (1974) Ltd. for judgment on the pleadings.

## FACTUAL AND PROCEDURAL HISTORY

Leonise Greig-Powell ("Greig-Powell") is a resident of St. Thomas, U.S. Virgin Islands.

LIAT (1974) Ltd. ("LIAT") is a foreign corporation incorporated under the laws of Antigua and Barbuda with its principal place of business in Antigua. LIAT is a regional

airline that offers flights between destinations in the
Caribbean.

On August 16, 2016, Greig-Powell was scheduled to travel
from St. Thomas to Trinidad on LIAT flight 553. Flight 553 was
scheduled to travel from St. Thomas to Antigua. From Antigua,
Greig-Powell was scheduled to travel on a connecting LIAT flight
to Trinidad. Greig-Powell alleges she missed her connecting
flight from Antigua to Trinidad because the flight from St.
Thomas to Antigua was delayed. LIAT placed Greig-Powell on the
next available flight from Antigua to Trinidad.

While on board the flight to Trinidad, Greig-Powell
informed a flight attendant that she was diabetic and felt
unwell. Greig-Powell further informed the flight attendant that
she required food to take her medication. Greig-Powell alleges
that her request for food was ignored. Subsequently, Greig-
Powell lost consciousness and struck her head on the seat of the
plane, sustaining injuries.

On May 17, 2017, Greig-Powell brought a complaint for
personal injury against LIAT in the Superior Court of the Virgin
Islands. On June 15, 2017, LIAT filed an answer. On June 26,
2017, LIAT removed the action to this Court based on diversity
jurisdiction. LIAT now moves for judgment on the pleadings.

## **DISCUSSION**

### **A. Judgment on the Pleadings**

Pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), "[a]fter the pleadings are closed … any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) ("A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed."). Requests for dismissal under Rule 12(c) are governed by the same standards as Fed. R. Civ. P. 12(b)(6) motions. *See Turbe*, 938 F.2d at 428. Accordingly, this Court must accept all Greig-Powell's allegations as true and "draw all reasonable factual inferences in favor of the Plaintiff." *Turbe*, 938 F.2d at 428; *see also Jablonski v. Pan American World Airways*, 863 F.2d 289, 290-91 (3d Cir. 1988) (citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). Furthermore, "under Rule 12(c), like Rule 12(b)(6), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (citation omitted); *see also Turbe*, 938 F.2d at 428.

### B. International Airline's Liability for Passenger Injury

It is well settled that "recovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking" in foreign territory is governed exclusively by the Montreal Convention and its predecessor, the Warsaw Convention. *El Al Isr. Airlines v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 174 (1999) (noting that Montreal Protocol No. 4, which had been ratified by the time *El Al* was decided, "merely clarifie[d], it d[id] not alter, the [Warsaw] Convention's rule of exclusivity."); *see also Acevedo-Reinoso v. Iberia Lineas Aereas De Espana S.A.*, 449 F.3d 7, 11 (1st Cir. 2006). In order to support "the uniform regulation of international air carrier liability," the Warsaw Convention was the exclusive remedy for an aggrieved traveler against a foreign airline. *El Al*, 525 U.S. at 161 ("[R]ecovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all") (alterations omitted) (citations omitted) (internal quotation marks omitted).

The Convention for the Unification of Certain Rules Relating to International Carriage by Air (referred to herein as the "Warsaw Convention") is a multilateral treaty that sets forth certain rules and regulations with respect to the

liability of aircraft carriers and the rights of passengers

involved in international commercial air travel.[1] The United

States became a party to the Warsaw Convention upon ratification

by the United States Senate on June 15, 1934. *See* 78 Cong. Rec.

S11582 (1934). In an effort to further improve uniformity among

and between countries with respect to air carriage, members of

the international community convened and drafted the Convention

for the Unification of Certain Rules for International Carriage

by Air (referred to herein as the "Montreal Convention" or

"MC").

The Montreal Convention is a multilateral treaty governing

the international air carriage of passengers, baggage, and

cargo.[2] The Montreal Convention superseded the Warsaw

Convention.[3] The United States became a party to the Montreal

Convention upon ratification by the United States Senate on July

31, 2003. *See* 149 Cong. Rec. S10870 (daily ed. July 31, 2003);

s*ee also* List of Signatories to the Montreal Convention,

---

[1]  *See* Multilateral Convention and Additional Protocol between the United
States and Other Powers Relating to International Air Transportation,
Concluded at Warsaw, October 12, 1929; Proclaimed October 29, 1934, *reprinted
at* 49 Stat. 3000 et seq.
[2]  *See* Convention for the Unification of Certain Rules for International
Carriage by Air, May 28, 1999, ICAO Doc. 9740, S. Treaty Doc. No. 106-45,
1999 WL 33292734 (2000).
[3]  *See* MC Art. 55(1) ("This Convention shall prevail over any rules which apply
to international carriage by air: 1. between States Parties to this
Convention by virtue of those States commonly being Party to (a) the
Convention for the Unification of Certain Rules Relating to International
Carriage by Air Signed at Warsaw on 12 October 1929 …").

maintained by the United Nations International Civil Aviation

Organization, available at

https://www.icao.int/secretariat/legal/List%20of%20Parties/Mtl99

_EN.pdf (last visited September 19, 2018). On November 4, 2003,

the Montreal Convention entered into force. *See Ehrlich v. Am.*

*Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004). Notably, the

Montreal Convention is self-executing and creates a private

right of action in U.S. courts.[4] The Montreal Convention covers

"all international carriage of persons, baggage or cargo

performed by aircraft for reward." MC Art. 1(1). Article 1(2) of

the Montreal Convention defines "international carriage" as:

> any carriage in which, according to the agreement between
> the parties, the place of departure and the place of
> destination, whether or not there be a break in the

---

[4] "[A] treaty is 'equivalent to an act of the legislature,'" and hence self-executing, when it "operates of itself without the aid of any legislative provision." *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (quoting *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 314 (1829)). "Self-executing treaties are those that immediately create rights and duties of private individuals which are enforceable and are to be enforced by domestic tribunals." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 257 n.34 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted.). By contrast, "non-self-executing treaties require implementing action by the political branches of government or are otherwise unsuitable for judicial application." *Flores*, 414 F.3d at 257 n.34 (internal quotation marks, alterations, and citations omitted.) "An international agreement of the United States is 'non-self-executing' (a) if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation, (b) if the Senate in giving consent to a treaty, or Congress by resolution, requires implementing legislation, or (c) if implementing legislation is constitutionally required." Restatement (Third) Of Foreign Relations Law § 111(4) (1987). The Senate Foreign Relations Committee's report on the Montreal Convention explicitly concluded that the treaty provides the basis for a private right of action in U.S. courts and that no separate implementing legislation was required. *See* S. Exec. Rep. 108-8, at 3, 6 (2003). *See also* 149 Cong. Rec. S10870 (daily ed. July 31, 2003) (statement of Sen. Biden).

carriage or a transhipment, are situated either within the
territories of two States [sic] Parties, or within the
territory of a single State Party if there is an agreed
stopping place within the territory of another State, even
if that State is not a State Party.

MC Art. 1(2).

Liability for personal injury under the Montreal Convention

is governed by Article 17:

The carrier is liable for damage sustained in case of death
or bodily injury of a passenger upon condition only that
the accident which caused the death or injury took place on
board the aircraft or in the course of any of the
operations of embarking or disembarking.

MC Art. 17(1).

## ANALYSIS

LIAT has moved for judgment on the pleadings on the grounds

that the complaint is preempted by the Montreal Convention and

does not sufficiently allege an "accident" within the meaning of

the Montreal Convention.

Because Greig-Powell's claim arises from injuries sustained

on a round-trip flight from St. Thomas, United States Virgin

Islands--"a single State Party"--with an agreed stopping place

in Trinidad--"another State"--the Montreal Convention applies.

*See e.g.*, *Blake v. Am. Airlines, Inc.*, 245 F.3d 1213, 1215 (11th

Cir. 2001) (finding that a round-trip flight from Jamaica with

an agreed stopping place in another State qualified as

international transportation if Jamaica was party to the

Convention).

In order to allege a claim under Article 17 of the Montreal

Convention, a claimant must establish the following elements:

(1) that there has been an accident; (2) that the accident

caused the passenger's injuries; and (3) that the accident

occurred while on board the aircraft or in the course of

embarking or disembarking the aircraft. *See E. Airlines, Inc. v.*

*Floyd*, 499 U.S. 530, 535-36 (1991).

In her complaint, Greig-Powell has alleged that an

accident--the failure to provide her with food in light of her

diabetic condition--occurred. Greig-Powell also alleges that she

sustained an injury as a result of the accident. Finally Greig-

Powell alleges that the injury occurred while on board her

flight to Trinidad. On its face, Greig-Powell's complaint

arguably alleges all of the elements necessary to plead a

personal injury claim under the Montreal Convention. LIAT does

not take issue with the sufficiency of Greig-Powell's

allegations surrounding the location of the injury nor the

causation of the injury. LIAT is not so amenable with respect to

the allegation of an accident. Indeed, LIAT disputes the

sufficiency of those allegations.

Neither the Montreal Convention nor the Warsaw Convention defines the term "accident."[5] However, the Supreme Court defined the term accident in the context of the Warsaw Convention in *Air France v. Saks*, 470 U.S. 392, 394-95 (1985). In that case, the plaintiff alleged that she suffered hearing loss following the plane's ordinary descent to its destination due to negligent maintenance and operation of the aircraft's pressurization system. *Id.* at 394. Because the Convention requires that an accident cause the alleged injury, the Court concluded that liability "arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. Thus, the Court concluded that an accident did not occur because the aircraft's pressurization system had operated in the usual manner. *Id.* at 395-96. The *Saks Court* noted that the definition of accident should be "flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405. The Court further counseled that, "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link

---

[5] The Explanatory Note to the Montreal Convention states that "it is expected" that the provision of Article 17 governing carrier liability for passenger injury and death will be "construed consistently with the precedent developed under the Warsaw Convention and its related instruments." S. Treaty Doc. No. 106-45, 1999 WL 33292734 at *16.

in the chain was an unusual or unexpected event external to the passenger." *Id*. at 406.

The Supreme Court reaffirmed that principle in *Olympic Airways v. Husain*, 540 U.S. 644 (2004). *Husain* involved an asthmatic passenger who was seated three rows away from the aircraft's smoking section. *Id*. at 646-47. After boarding the plane, Rubina Husain ("Husain") informed a flight attendant that her husband, Abid M. Hanson ("Hanson"), must be moved to a new seat. *Id*. at 647. The flight attendant denied Husain's request. *Id*. Prior to takeoff, Husain asked a second time and explained that Hanson was "allergic to smoke." *Id*. The flight attendant again refused to reseat Hanson. *Id*. Shortly after takeoff, passengers in the smoking section began to smoke. Husain asked a third and final time that Hanson be reseated. *Id*. The flight attendant refused to provide any assistance and falsely stated that the flight was full. *Id*. Approximately two hours into the flight, Hanson went to the front of the plane to get fresher air. *Id*. Shortly thereafter, Hanson suffered an asthma attack. *Id*. Despite receiving two shots of epinephrine, CPR, and oxygen by an allergist traveling with him, Hanson died as a result of the asthma attack. *Id*.

The Court held that the flight attendant's refusal to help
Hanson avoid exposure to cigarette smoke in the cabin qualified
as an accident. The Court also held that an accident had
occurred because "the carrier's unusual and unexpected refusal
to assist a passenger [by moving his seat] is a link in a chain
of causation resulting in a passenger's pre-existing medical
condition being aggravated by exposure to a normal condition in
the aircraft cabin." *Id*. at 646. The *Husain* Court noted that, in
the Court of Appeals, the petitioner did not challenge the
District Court's finding that the flight attendant's conduct was
unusual or unexpected in light of the relevant industry standard
or petitioner's own company policy. *Id*. at 652. Thus, the Court
assumed the flight attendant's conduct qualified as "unusual or
unexpected" for purposes of the opinion. *Id*. at 653.

Similarly, in *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68
(1st Cir. 2000), the First Circuit found that a claim for
personal injury survived a 12(b)(6) motion. In that case, the
First Circuit reasoned that the term "accident" is broad enough
to encompass torts committed by other passengers. *Langadinos*,
199 F.3d at 70. Consistent with that view, the Court noted that
"[s]erving alcohol to an intoxicated passenger may, in some
instances, create a foreseeable risk that the passenger will
cause injury to others." *Id*. at 71. *Cf. Bousignac v. United*

*Cont'l Holding, Inc.*, 2012 U.S. Dist. LEXIS 190259, at *14

(D.N.J. 2012) (finding *Husain* distinguishable where a passenger

did not inform the flight attendant of any medical conditions or

issues).

Here, LIAT is alleged to have refused to provide food to

Greig-Powell--a known diabetic passenger. As that refusal

occurred after being informed of the medical necessity of such

food, and before Greig-Powell sustained her injuries, it may be

a link in a chain of causation leading to Greig-Powell's injury.

Indeed, LIAT's refusal, under those circumstances, arguably, is

an unexpected or unusual event. Significantly, giving Greig-

Powell all favorable inferences, as the Court must at this

stage, Greig-Powell has sufficiently alleged an accident. As she

has sufficiently alleged the other elements for a personal

injury claim under the Montreal Convention, LIAT may only

prevail on its motion if no material issue of fact remains to be

resolved. Upon review of all the pleadings, the Court is not

persuaded that LIAT has clearly established that "no material

issue of fact remains to be resolved and that [the movant] is

entitled to judgment as a matter of law." *Society Hill Civic*

*Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (citation

omitted).

The premises considered, it is hereby

**ORDERED** that the motion for judgment on the pleadings is

**DENIED**; and it is further

**ORDERED** that the motion to stay discovery is **DENIED**.


**S\_____**
**Curtis V. Gómez**
**District Judge**